## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | |
|---|---|
| SEBE ALGOFI, individually and on behalf of all others similarly situated, | Case No. 4:21-cv-1057 |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| ENERGIZER HOLDINGS, INC., EDGEWELL PERSONAL CARE COMPANY, EDGEWELL PERSONAL CARE BRANDS, LLC, EDGEWELL PERSONAL CARE, LLC, PLAYTEX PRODUCTS, INC., and SUN PHARMACEUTICALS, LLC, | |
| Defendants. | |

Plaintiff Sebe Algofi, individually and on behalf of all others similarly situated, brings this action against Energizer Holdings, Inc., Edgewell Personal Care Company, Edgewell Personal Care Brands, LLC, Edgewell Personal Care, LLC, Playtex Products, Inc., and Sun Pharmaceuticals, LLC (collectively, "Defendants"), and in support thereof states as follows:

## CLASS ACTION COMPLAINT

1.      Defendants manufacture, distribute, market, and sell several over-the-counter sunscreen products under their brand name "Banana Boat."

2.      Defendants' Banana Boat sunscreen products were advertised to consumers and represented as safe and effective and not adulterated with benzene, a known human carcinogen.

3.     But Defendants' Banana Boat sunscreen products were not safe: several of Defendants' Banana Boat sunscreen products have been independently tested and shown to be adulterated with benzene. The presence of benzene in Defendants' Banana Boat sunscreen products was not disclosed in the products' label, in violation of state and federal law. Despite this, their makers continued to tout their safety and conceal their risks.

4.     Because Plaintiff purchased worthless products, she suffered an economic loss so the makers of Banana Boat sunscreen products could reap ill-gotten profits.

## JURISDICTION AND VENUE

5.     This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(d) because: (i) there are 100 or more class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because at least one member of the classes of plaintiffs and one defendant are citizens of different states.

6.     Venue in this District is proper under 28 U.S.C. § 1391(b) and (c) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in the Eastern District of Missouri and Defendants are subject to personal jurisdiction in the Eastern District of Missouri. Pursuant to L.R. 3.2, divisional venue is proper in the Eastern Division of the Eastern District of Missouri because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in that Division, and Defendants Edgewell and Energizer are headquartered in this District.

## PARTIES

7.     Plaintiff Sebe Algofi resides in Brooklyn, New York. In 2020, Plaintiff purchased Banana Boat sunscreen from Target for her children. During this time, Plaintiff was unaware that

Defendants' sunscreen products may be adulterated with benzene. Plaintiff purchased Defendants' sunscreen products on the assumption that the labeling of these products was accurate and that the products were unadulterated, safe, and effective. Upon learning of the serious safety risks posed by Defendants' sunscreen products, she stopped using them. Plaintiff would not have purchased Defendants' sunscreen products had she known there was a risk the products may contain benzene, a known human carcinogen. As a result, Plaintiff suffered injury in fact when she spent money to purchase sunscreen products that she would not otherwise have purchased absent Defendants' misconduct, as alleged herein.

8.      Defendant Energizer Holdings, Inc. ("Energizer") is a Missouri corporation with its principal place of business at 533 Maryville University Drive, St. Louis, MO 63141. Energizer manufactures, distributes, markets, and/or sells sun care products under the Banana Boat brand to consumers nationwide. Energizer may be served via its registered agent at: C T Corporation System, 120 S. Central Ave., Clayton, MO 63015.

9.      Defendant Edgewell Personal Care Company is a foreign business corporation with its principal place of business in Chesterfield, Missouri. Edgewell Personal Care Company is licensed to and does business throughout the United States. Edgewell Personal Care Company manufactures, distributes, markets, and/or sells personal care products, including Banana Boat sunscreen products, to consumers nationwide. Edgewell Personal Care Company may be served via its registered agent at: Corporate Creations Network, Inc., 12747 Olive Blvd., #300, St. Louis, MO 63141.

10.     Defendant Edgewell Personal Care Brands, LLC is a limited liability company organized under the laws of the State of Delaware with its principal place of business in Shelton, Connecticut. Edgewell Personal Care Brands, LLC is a wholly owned subsidiary of Edgewell

Personal Care Company. Edgewell Personal Care Brands, LLC manufactures, distributes, markets, and/or sells personal care products, including Banana Boat sunscreen products, to consumers nationwide. Edgewell Personal Care Brands, LLC may be served via its registered agent at: Corporate Creations Network, Inc., 12747 Olive Blvd., #300, St. Louis, MO 63141.

11.    Edgewell Personal Care, LLC is a limited liability company organized under the laws of the State of Delaware with its principal place of business in Shelton, Connecticut. Edgewell Personal Care, LLC is a wholly owned subsidiary of Edgewell Personal Care Company. Edgewell Personal Care, LLC manufactures, distributes, markets, and/or sells personal care products, including Banana Boat sunscreen products, to consumers nationwide. Edgewell Personal Care, LLC may be served via its registered agent at: Corporate Creations Network, Inc., 12747 Olive Blvd., #300, St. Louis, MO 63141.

12.    At all relevant times, each and every "Edgewell" Defendant was acting as an agent and/or employee of each of the other "Edgewell" Defendants with respect to the manufacturing, marketing, selling, and/or distributing of Banana Boat sunscreen products, and was the owner, agent, servant, joint-venturer, and employee, each of the other and each was acting within the course and scope of its ownership, agency, service, joint venture, and employment with the full knowledge and consent of each of the other "Edgewell" Defendants. On information and belief, each of the acts and/or omissions complained of herein was made known to, and ratified by, each of the other "Edgewell" Defendants. All three "Edgewell" Defendants will be referred to collectively hereinafter as "Edgewell."

13.    Upon information and belief, the planning and execution of the advertising, marketing, labeling, packaging, testing, and/or corporate operations concerning the products and

the claims alleged herein were primarily carried out at Energizer's and/or Edgewell's headquarters and facilities within Missouri, as is most, or all, of the products' manufacturing and assembly.

14.     Defendant Playtex Products, LLC is a limited liability company organized under the laws of the State of Delaware with its principal place of business in Shelton, Connecticut. Playtex Products, LLC is a wholly owned subsidiary of Edgewell Personal Care Company. Playtex Products, LLC manufactures, distributes, markets, and/or sells Banana Boat sunscreen products as one of its brands to consumers nationwide. Playtex Products, LLC may be served via its registered agent at: Corporate Creations Network, Inc., 3411 Silverside Road, Tatnall Building, Ste., 104, Wilmington, DE 19810.

15.     Defendant Sun Pharmaceuticals, LLC is a limited liability company organized under the laws of Delaware with its principal place of business in Shelton, Connecticut. Sun Pharmaceuticals is a wholly owned subsidiary of Edgewell Personal Care Company. Sun Pharmaceuticals manufactures, distributes, markets, and/or sells personal care products, including Banana Boat sunscreen products, to consumers nationwide. Sun Pharmaceuticals may be served via its registered agent at: Corporate Creations Network, Inc., 3411 Silverside Road, Tatnall Building, Ste., 104, Wilmington, DE 19810.

## FACTUAL ALLEGATIONS

16.     Defendants manufacture, market, advertise, label, distribute, and/or sell a variety of Banana Boat sunscreen spray/aerosol products and lotions, including:

| 1. | Banana Boat | Spray | Deep Tanning Dry Oil Clear Sunscreen Spray SPF 4 |
|----|-------------|-------|-------------------------------------------------|
| 2. | Banana Boat | Spray | Kids Max Protect & Play Sunscreen C-Spray SPF 100 |
| 3. | Banana Boat | Lotion | Kids Mineral Based Sunscreen Lotion SPF 50+ |
| 4. | Banana Boat | Spray | Kids Sport Sunscreen Lotion Spray SPF 50 |
| 5. | Banana Boat | Spray | Protective Dry Oil Clear Sunscreen Spray with Coconut Oil FPS 15 |
| 6. | Banana Boat | Spray | Simply Protect Kids Sunscreen Spray SPF 50+ |

| 7. | Banana Boat | Spray | Simply Protect Sensitive Mineral Enriched Sunscreen Lotion Spray SPF 50 |
|---|---|---|---|
| 8. | Banana Boat | Spray | Ultra Defense Ultra Mist Clear Sunscreen Spray SPF 100 |
| 9. | Banana Boat | Spray | Ultra Sport Clear Sunscreen Spray SPF 100 |
| 10. | Banana Boat | Lotion | Ultra Sport Sunscreen Lotion SPF 100 |
| 11. | Banana Boat | Spray | Ultra Sport Clear Sunscreen Spray SPF 30 |
| 12. | Banana Boat | Spray | Ultra Sport Clear Sunscreen Spray SPF 50 (hereafter collectively referred to as "Sunscreen Products").[1] |

17. In 2020, Valisure LLC and ValisureRX LLC ("Valisure"), an analytical pharmacy, ran tests on a variety of Defendants' Sunscreen Products. Specifically, Valisure tested numerous lots of Defendants' spray and lotion Sunscreen Products. Through its testing, Valisure discovered that certain of the Sunscreen Products contain benzene, with values ranging from less than 0.1 parts per million ("ppm"), 0.10 ppm to 2 ppm, and more than 2 ppm. For reference, the National Institute for Occupational Safety and Health recommends protective equipment be worn by workers expecting to be exposed to benzene at concentrations of 0.1 ppm and includes "skin absorption" as an exposure route.[2] Benzene is not listed as an active or inactive ingredient on any of the labels of Defendants' Sunscreen Products. Moreover, all of the Sunscreen Products are marketed and advertised in an identical manner—as "Sunscreen."

18. On May 25, 2021, Valisure filed a citizen petition with the Food and Drug Administration ("FDA") asking the agency to recall all batches of Defendants' Sunscreen Products that (as tested) contained 0.1 ppm or more of benzene on the basis that they are adulterated under Section 501 of the Federal Drug and Cosmetics Act ("FDCA") and misbranded under Section 502 of the FDCA, in violation of 21 U.S.C. § 351 and 21 U.S.C. § 352, respectively. As of this filing,

---

[1] Discovery may reveal additional Sunscreen Products manufactured, sold, and distributed by Defendants that are affected by this action and Plaintiff reserves the right to include any such products in this action.
[2] Centers for Disease Control and Prevention. The National Institute for Occupational Safety and Health, Benzene (https://www.cdc.gov/niosh/npg/npgd0049.html).

the FDA has not responded to Valisure's citizen petition and Defendants have not taken any action to remove the Sunscreen Products from the market.

19.     Benzene is used primarily as a solvent in the chemical and pharmaceutical industries, as a starting material and intermediate in the synthesis of numerous chemicals, and in gasoline. The major United States source of benzene is petroleum. The health hazards of benzene have been recognized for over one hundred years. According to the National Toxicology Program, benzene is "*known to be a human carcinogen* based on sufficient evidence of carcinogenicity from studies in humans."[3] Benzene has also been "found to be carcinogenic to humans" by the International Agency for Research on Cancer ("IARC"). Benzene was "[f]irst evaluated by IARC in 1974 . . . and was found to be carcinogenic to humans (Group 1), a finding that has stood since that time."[4] As noted by the IARC:

> In the current evaluation, the Working Group again confirmed the carcinogenicity of benzene based on sufficient evidence of carcinogenicity in humans, sufficient evidence of carcinogenicity in experimental animals, and strong mechanistic evidence. . . . The Working Group affirmed the strong evidence that benzene is genotoxic, and found that it also exhibits many other key characteristics of carcinogens, including in exposed humans. In particular, benzene is metabolically activated to electrophilic metabolites; induces oxidative stress and associated oxidative damage to DNA; is genotoxic; alters DNA repair or causes genomic instability; is immunosuppressive; alters cell proliferation, cell death, or nutrient supply; and modulates receptor-mediated effects.[5]

20.     Likewise, the FDA recognizes that "[b]enzene is a carcinogen that can cause cancer in humans"[6] and classifies benzene as a "Class 1" solvent that should be "avoided."[7] FDA's

---

[3] http://ntp.niehs.nih.gov/go/roc/content/profiles/benzene.pdf (emphasis in original).
[4] Benzene / IARC Working Group on the Evaluation of Carcinogenic Risks to Humans (2017: Lyon, France), at p. 33.
[5] *Id.* at 34.
[6] https://www.fda.gov/food/chemical-contaminants-food/questions-and-answers-occurrence-benzene-soft-drinks-and-other-beverages#q1.
[7] https://www.fda.gov/media/71737/download.

Guidance for Industry states that "Solvents in Class 1 . . . should not be employed in the manufacture of drug substances, excipients, and drug products because of their unacceptable toxicities or deleterious environmental effect."[8]

21.    The FDA regulates sunscreens to ensure they meet safety and effectiveness standards.[9] The FDA also regulates sunscreens, including the Sunscreen Products at issue here, as over-the-counter drugs rather than as cosmetics. As an FDA-regulated product, sunscreens must pass certain tests before they are sold. As noted on FDA's website,

> Every drug has active ingredients and inactive ingredients. In the case of sunscreen, active ingredients are the ones that are protecting your skin from the sun's harmful UV rays. Inactive ingredients are all other ingredients that are not active ingredients, such as water or oil that may be used in formulating sunscreens.[10]

22.    Per the FDA regulations governing Defendants' Sunscreen Products, titled "Sunscreen Drug Products for Over-the-Counter Human Use,"[11] there are certain acceptable active ingredients in products that are labeled as sunscreen.[12] Benzene, a known human carcinogen, is not on the FDA's list of acceptable active or inactive ingredients for any sunscreen products, regardless of manufacturer. Nor is benzene identified as an active or inactive ingredient on the labels of any of the Defendants' Sunscreen Products. Thus, Defendants' assurances in their marketing of their Sunscreen Products—e.g., that "[t]his product is safe for its intended use based

---

[8] FDA Guidance for Industry, Q3C Impurities: Residual Solvents (6/30/2017), available at https://www.fda.gov/media/71736/download.
[9] *See generally* 21 CFR §§ 352.1– 352.77.
[10] https://www.fda.gov/drugs/understanding-over-counter-medicines/sunscreen-how-help-protect-your-skin-sun.
[11] 21 CFR §352.10.
[12] https://www.fda.gov/drugs/understanding-over-counter-medicines/sunscreen-how-help-protect-your-skin-sun.

on the formulation, testing results, and the long history of safe consumer use"—are false and misleading.[13]

23.    The governing regulations provide: "An over-the-counter sunscreen drug product in a form suitable for topical administration is generally recognized as safe and effective and is not misbranded if it meets each condition in this part and each general condition established in 330.1 of this chapter."[14] Defendants failed to meet this standard as described herein.

24.    Because Defendants did not disclose that benzene, a known human carcinogen, may be present in the Sunscreen Products purchased by Plaintiff and the members of the putative Classes, the Sunscreen Products are adulterated and misbranded. Furthermore, the disclosure constitutes a material omission. As noted by the World Health Organization, there is no "no safe level of benzene" exposure, so it is unsuitable for human application as an ingredient in sunscreen.[15]

25.    Defendants wrongfully advertised and sold the Sunscreen Products without any labeling to indicate to consumers that these products may contain benzene. The following image shows an example:

---

[13] https://edgewell.com/wp-content/uploads/2016/08/92014320-BB-Dry-Oil-Spray-SPF-4.pdf.
[14] 21 CFR §352.1.
[15] https://www.who.int/ipcs/features/benzene.pdf.



26.    Plaintiff has standing to represent members of the putative Classes because there is sufficient similarity between the specific products purchased by Plaintiff and the other Sunscreen Products not purchased by Plaintiff. Specifically, each and every one of the Sunscreen Products (i) are marketed in substantially the same way—as "Sunscreen"—and (ii) fail to include labeling indicating to consumers that the Sunscreen Products may contain benzene as an active or inactive ingredient. Accordingly, the misleading effect of all of the Sunscreen Products' labels is substantially the same.

27.    Defendants' failure to control for benzene contamination and continued sale of their adulterated products constitutes actionable fraud.

28.    Plaintiff and the Classes were injured by the full purchase price of the Sunscreen Products because the Sunscreen Products are worthless, as they are adulterated and contain harmful levels of benzene, and Defendants have failed to warn consumers of this fact. Such illegally sold products are worthless and have no value. *See Debernardis v. IQ Formulations, LLC*, 942 F.3d 1076, 1085 (11th Cir. 2019); *see also In re Valsartan, Losartan, & Irbesartan Prod. Liab.*

10

*Litig.*, 2021 WL 222776, at *16 (D.N.J. Jan. 22, 2021) ("This Court finds that contaminated drugs are economically worthless at the point of sale by virtue of the dangerousness caused by their contamination, regardless whether the sold VCDs actually achieved the medical purpose of lowering blood pressure. Put differently, contaminated drugs, even if medically efficacious for their purpose, cannot create a benefit of the bargain because the contaminants, and their dangerous effects, were never bargained for."). Plaintiff and members of the Classes bargained for a sunscreen product free of contaminants and dangerous substances and were deprived of the basis of their bargain when Defendants sold them a sunscreen product containing the dangerous substance benzene, which rendered the Sunscreen Products unmerchantable and unfit for use.

29.     As the Sunscreen Products expose consumers to benzene well above the legal limit, the Sunscreen Products are not fit for use by humans.

30.     Plaintiff seeks to recover damages because the Sunscreen Products are adulterated, defective, worthless, and unfit for human use due to the presence of benzene, a carcinogenic and toxic chemical impurity.

31.     Plaintiff and the putative Classes suffered economic damages due to Defendants' misconduct (as set forth below) and they seek injunctive relief and restitution for the full purchase price of the sunscreen product(s) they purchased. Plaintiff alleges the following based upon personal knowledge as well as investigation by counsel, and as to all other matters, upon information and belief. Plaintiff further believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

32.     Plaintiff brings this action on behalf of herself and the Classes for equitable relief and to recover damages and restitution for: violation of the consumer protection statutes invoked herein; fraudulent concealment; and unjust enrichment.

***Defendants' Marketing and Sale of the Sunscreen Products Violates Federal Law***

33.    Section 5(a) of the Federal Trade Commission ("FTC") Act, 15 U.S.C. § 45(a), prohibits "unfair or deceptive acts or practices in or affecting commerce."

34.    Misrepresentations or deceptive omissions of material fact constitute deceptive acts or practices prohibited by Section 5(a) of the FTC Act.

35.    Section 12 of the FTC Act, 15 U.S.C. § 52, prohibits the dissemination of any false advertisement in or affecting commerce for the purpose of inducing, or which is likely to induce, the purchase of food, drugs, devices, services, or cosmetics. For the purposes of Section 12 of the FTC Act, 15 U.S.C. § 52, the Sunscreen Products are either "foods" or "drugs" as defined in Section 15(b) and (c) of the FTC Act, 15 U.S.C. §§ 55(b), (c). Under these provisions, companies must have a reasonable basis for making objective product claims.

36.    As alleged herein, Defendants have represented that the ingredients in their Sunscreen Products are safe and effective and are not adulterated with benzene. However, these representations are materially unfair, false, deceptive, and/or misleading as the Sunscreen Products actually contain dangerous levels of benzene. The making of such misrepresentations by Defendants constitutes an unfair and/or deceptive act or practice and the making of false advertisements in violation of Sections 5(a) and 12 of the FTC Act, 15 U.S.C. §§ 45(a), 52.

## CLASS ACTION ALLEGATIONS

37.    Plaintiff brings this case as a class action pursuant to Federal Rule of Civil Procedure 23 individually and on behalf of the following classes:

**Nationwide Class**: All persons within the United States who purchased the Sunscreen Products within the applicable statute of limitations.

**New York Sub-Class**: All persons within the State of New York who purchased the Sunscreen Products within the applicable statute of limitations.

38.    The Nationwide Class and New York Sub-Class shall collectively be referred to herein as the "Classes."

39.    Plaintiff reserves the right to amend the Class definitions if further investigation and discovery indicate that the Class definitions should be narrowed, expanded, or otherwise modified.

40.    Excluded from the Classes are governmental entities, Defendants, and Defendants' officers, directors, affiliates, legal representatives, and employees, and purchasers for resale.

41.    **Numerosity** – Federal Rule of Civil Procedure 23(a)(1). The Classes number in at least the thousands of persons. As a result, joinder of all members of the Classes in a single action is impracticable. Members of the Classes may be informed of the pendency of this class action through a variety of means, including but not limited to, direct mail, email, published notice, and website posting.

42.    **Existence and Predominance of Common Questions of Law and Fact** – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3). There are questions of fact and law common to the Classes that predominate over any question affecting only individual members. Those questions, each of which may also be certified under Rule 23(c)(4), include without limitation:

    a.    whether Defendants' advertising, merchandising, and promotional materials directed to Plaintiff were unfair and/or deceptive regarding the risks posed by Defendants' Banana Boat Sunscreen Products;

    b.    what Defendants made representations regarding the safety of their Banana Boat Sunscreen Products;

    c.    whether Defendants omitted material information regarding the safety of their Banana Boat Sunscreen Products;

    d.   whether Defendants' Banana Boat Sunscreen Products were merchantable;

    e.   whether Defendants violated the consumer protection statutes invoked herein;

    f.   whether Defendants' conduct alleged herein was fraudulent; and

    g.   whether Defendants were unjustly enriched by sales of their Banana Boat Sunscreen Products.

43.    The questions set forth above predominate over any questions affecting only individual persons concerning sales of Defendants' Banana Boat Sunscreen Products throughout the United States, and a class action is superior with respect to considerations of consistency, economy, efficiency, fairness, and equity to other available methods for the fair and efficient adjudication of Plaintiff's claims.

44.    **Typicality** – Federal Rule of Civil Procedure 23(a)(3). Plaintiff's claims are typical of those of the Classes in that the members of the Classes uniformly purchased Defendants' Banana Boat Sunscreen Products and were subjected to Defendants' uniform merchandising materials and representations at the time of purchase.

45.    **Superiority** – A class action is the appropriate method for the fair and efficient adjudication of this controversy. The presentation of separate actions by individual members of the Classes could create a risk of inconsistent adjudications, establish incompatible standards of conduct for Defendants, and/or substantially impair or impede the ability of members of the Classes to protect their interests. In addition, it would be impracticable and undesirable for each member of the Classes who suffered an economic loss to bring a separate action. The maintenance of separate actions would place a substantial and unnecessary burden on the courts and could result in inconsistent adjudications, while a single class action can determine, with judicial economy, the rights of all members of the Classes.

46.    **Adequacy** – Federal Rule of Civil Procedure 23(a)(4). Plaintiff is an adequate representative of the Classes because she is a member of the Classes and her interests do not conflict with the interests of the Classes that she seeks to represent. The interests of the members of the Classes will be fairly and adequately protected by Plaintiff and her undersigned counsel. Counsel are experienced in the litigation of civil matters, including the prosecution of consumer protection class action cases.

47.    **Insufficiency of Separate Actions** – Federal Rule of Civil Procedure 23(b)(1). Absent a representative class action, members of the Classes would continue to suffer the harm described herein, for which they would have no remedy. Even if separate actions could be brought by individual consumers, the resulting multiplicity of lawsuits would cause undue burden and expense for both the Court and the litigants, as well as create a risk of inconsistent rulings and adjudications that might be dispositive of the interests of similarly situated purchasers, substantially impeding their ability to protect their interests, while establishing incompatible standards of conduct for Defendants. The proposed Classes thus satisfy the requirements of Fed. R. Civ. P. 23(b)(1).

48.    **Declaratory and Injunctive Relief** – Federal Rule of Civil Procedure 23(b)(2). Defendants have acted or refused to act on grounds generally applicable to the Plaintiff and the other members of the Classes, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the members of the Classes as a whole. In particular, Plaintiff seeks to certify a Class to enjoin Defendants from selling or otherwise distributing the Sunscreen Products as labeled until such time that Defendants can demonstrate to the Court's satisfaction that the Sunscreen Products confer the advertised benefits and are otherwise safe to use as intended.

15

49.    Additionally, the Classes may be certified under Rule 23(b)(1) and/or (b)(2) because:

  a.    The prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudications with respect to individual members of the Classes that would establish incompatible standards of conduct for the Defendants;

  b.    The prosecution of separate actions by individual members of the Classes would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other members of the Classes not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and/or

  c.    Defendants have acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate final and injunctive relief with respect to the members of the Classes as a whole.

## CAUSES OF ACTION

## COUNT I

**Violation of the Missouri Merchandising Practices Act
(On Behalf of the Nationwide Class)**

50.    Plaintiff incorporates the allegations set forth in the preceding paragraphs as though set forth fully herein.

51.    The Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010, et seq., prohibits "act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce . . . in or from the state of Missouri." Mo. Rev. Stat. § 407.020(1).

52.    Defendants' Banana Boat Sunscreen Products were "Merchandise" within the meaning of Mo. Rev. Stat. § 407.010(4).

53.    Defendants and Plaintiff are "Person[s]" within the meaning of Mo. Rev. Stat. § 407.010(5).

54.    Defendants were engaged in "Trade" or "commerce" within the meaning of Mo. Rev. Stat. § 407.010(7).

55.    Plaintiff purchased Defendants' Banana Boat Sunscreen Products primarily for "personal, family or household purposes" within the meaning of Mo. Rev. Stat. § 407.025.1(1).

56.    In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the Missouri Merchandising Practices Act by knowingly and intentionally misrepresenting, omitting, concealing, or failing to disclose material facts on the labels and packaging of their Banana Boat Sunscreen Products, including omitting the material fact from the Sunscreen Products' labels that the Sunscreen Products contain high levels of benzene.

57.    In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the Missouri Merchandising Practices Act by knowingly and intentionally misrepresenting, omitting, concealing, or failing to disclose material facts in the marketing, advertising, and promotions for their Banana Boat Sunscreen Products, including omitting the material fact from the Sunscreen Products' labels that the Sunscreen Products contain high levels of benzene.

58.    By knowingly and intentionally misrepresenting, omitting, concealing, or failing to disclose material facts regarding their Banana Boat Sunscreen Products, as detailed above, Defendants engaged in one or more unfair and/or deceptive business practices prohibited by the Missouri Merchandising Practices Act.

59.     Defendants' misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of their Banana Boat Sunscreen Products were disseminated to Plaintiff in a uniform manner.

60.     Defendants' unfair and/or deceptive acts or practices, including their misrepresentations, concealments, omissions, and/or suppression of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to, and in fact did, deceive reasonable consumers, including Plaintiff, about the inherently defective and unreasonably dangerous nature of their Banana Boat Sunscreen Products.

61.     The facts regarding their Banana Boat Sunscreen Products that Defendants knowingly and intentionally misrepresented, concealed, omitted, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiff, who considered such facts to be important to her purchase decisions with respect to Defendants' Banana Boat Sunscreen Products.

62.     Plaintiff was aggrieved by Defendants' violations of the Missouri Merchandising Practices Act because she suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' knowing and intentional misrepresentations, concealments, omissions, and failures to disclose material facts regarding their Banana Boat Sunscreen Products.

63.     Plaintiff was deceived by Defendants' misrepresentations, concealments, omissions, and failures to disclose material facts regarding their Banana Boat Sunscreen Products. Had Defendants not engaged in the deceptive acts and practices alleged herein, Plaintiff would not have purchased Defendants' Banana Boat Sunscreen Products; thus, she did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

<u>**COUNT II**</u>

**Violation of New York General Business Law § 349 et. seq.**
**(On Behalf of the New York Sub-Class)**

64.     Plaintiff incorporates the allegations set forth in the preceding paragraphs as though set forth fully herein.

65.     Plaintiff brings this claim on behalf of the New York Sub-Class for violation of N.Y. Gen. Bus. Law § 349 et seq.

66.     Section 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in [the State of New York]." N.Y. Gen. Bus. Law § 349(a).

67.     Defendants' marketing and advertising of the Sunscreen Products, as alleged herein, constitute "deceptive" acts and practices, as such conduct misled Plaintiff and the New York Sub-Class as to the characteristics and value of the Sunscreen Products.

68.     Subsection (h) of § 349 grants private plaintiffs a right of action, as follows:

In addition to the right of action granted to the attorney general pursuant to this section, any person who has been injured by reason of any violation of this section may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such actions. The court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars, if the court finds the defendant willfully or knowingly violated this section. The court may award reasonable attorney's fees to a prevailing plaintiff.

69.     In accordance with N.Y. Gen. Bus. Law § 349(h), Plaintiff seeks an order enjoining Defendants from continuing the unlawful deceptive acts and practices set out above. Absent a Court order enjoining these types of practices in the future, Plaintiff and other members of the New York Sub-Class will continue to suffer harm.

70.     As a consequence of Defendants' deceptive acts and practices, Plaintiff and other members of the New York Sub-Class suffered an ascertainable loss of monies. By reason of the foregoing, Plaintiff and other members of the New York Sub-Class also seek actual damages or statutory damages of $50 per violation, whichever is greater, as well as punitive damages.

## COUNT III

**Violation of New York General Business Law § 350 et seq.**
**(On Behalf of the New York Sub-Class)**

71.     Plaintiff incorporates the allegations set forth in the preceding paragraphs as though set forth fully herein.

72.     Plaintiff brings this claim on behalf of the New York Sub-Class for violation of N.Y. Gen. Bus. Law § 350 et seq.

73.     Section 350 prohibits "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in [the State of New York]." N.Y. Gen. Bus. Law § 350.

74.     Section 350-a defines "false advertising" as "advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect." N.Y. Gen. Bus. Law § 350-a.1. The section also provides that advertising can be false by omission, as it further defines "false advertising" to include "advertising [that] fails to reveal facts material in the light of such representations with respect to the commodity . . . to which the advertising relates." *Id.*

75.     Defendants' labeling, marketing, and advertising of the Sunscreen Products, as alleged herein, are "misleading in a material respect" and, thus, constitute "false advertising," as they falsely represent the Sunscreen Products as being safe and failing to inform consumers of the risk the Sunscreen Products contain benzene.

20

76.     Plaintiff seeks an order enjoining Defendants from continuing this false advertising. Absent enjoining this false advertising, Defendants will continue to mislead Plaintiff and the other members of the New York Sub-Class as to the characteristics of the Sunscreen Products and, in doing so, irreparably harm each of the New York Sub-Class members.

77.     As a direct and proximate result of Defendants' violation of New York General Business Law § 350, Plaintiff and the other members of the New York Sub-Class have also suffered an ascertainable loss of monies. By reason of the foregoing, Plaintiff and other members of the New York Sub-Class also seek actual damages or statutory damages of $500 per violation, whichever is greater, as well as punitive damages. N.Y. Gen. Bus. Law § 350-e.

## COUNT IV

### Fraudulent Concealment
### (On Behalf of the Nationwide Class and the New York Sub-Class)

78.     Plaintiff incorporates the allegations set forth in the preceding paragraphs as though set forth fully herein.

79.     Plaintiff brings this claim against Defendants on behalf of herself and the other members of the Nationwide Class and the New York Sub-Class.

80.     Defendants had a duty to disclose material facts to Plaintiff and the Classes given their relationship as contracting parties and intended users of the Sunscreen Products. Defendants also had a duty to disclose material facts to Plaintiff and the Classes, namely that it was in fact manufacturing, distributing, and selling harmful products unfit for human use, because Defendants had superior knowledge such that the transactions without the disclosure were rendered inherently unfair.

81.     Defendants possessed knowledge of these material facts. Since at least mid-2020, numerous recalls put Defendants on notice that adulterated and misbranded products were being

21

investigated for contamination with carcinogens, including benzene. Further, benzene is not unavoidable in the manufacture of sunscreens.

82. During this time, Plaintiff and members of the Classes were using the Sunscreen Products without knowing they contained dangerous levels of benzene.

83. Defendants failed to discharge its duty to disclose these materials facts.

84. In so failing to disclose these material facts to Plaintiff and the Classes, Defendants intended to hide from Plaintiff and the Classes that they were purchasing and consuming the Sunscreen Products with harmful defects that were unfit for human use, and thus acted with scienter and/or an intent to defraud.

85. Plaintiff and the Classes reasonably relied on Defendants' failure to disclose insofar as they would not have purchased the defective Sunscreen Products manufactured and sold by Defendants had they known they contained unsafe levels of benzene.

86. As a direct and proximate cause of Defendants' fraudulent concealment, Plaintiff and the Classes suffered damages in the amount of monies paid for the defective Sunscreen Products.

87. As a result of Defendants' willful and malicious conduct, punitive damages are warranted.

## COUNT V

### Unjust Enrichment
### (On Behalf of the Nationwide Class)

88. Plaintiff incorporates the allegations set forth in the preceding paragraphs as though set forth fully herein.

89.     Plaintiff and the other members of the Nationwide Class conferred benefits on Defendants in the form of monies paid to purchase Defendants' defective and worthless Sunscreen Products.

90.     Defendants voluntarily accepted and retained this benefit.

91.     Because this benefit was obtained unlawfully, namely by selling and accepting compensation for products unfit for human use, it would be unjust and inequitable for Defendants to retain the benefit without paying the value thereof.

92.     Defendants received benefits in the form of revenues from purchases of the Sunscreen Products to the detriment of Plaintiff and the other members of the Nationwide Class because Plaintiff and members of the Nationwide Class purchased mislabeled products that were not what they bargained for and were not safe and effective, as claimed.

93.     Defendants have been unjustly enriched in retaining the revenues derived from the purchases of the Sunscreen Products by Plaintiff and the other members of the Nationwide Class. Retention of those monies under these circumstances is unjust and inequitable because Defendants' labeling of the Sunscreen Products was misleading to consumers, which caused injuries to Plaintiff and members of the Nationwide Class, because they would have not purchased the Sunscreen Products had they known the true facts.

94.     Because Defendants' retention of the non-gratuitous benefits conferred on them by Plaintiff and members of the Nationwide Class is unjust and inequitable, Defendants must pay restitution to Plaintiff and members of the Nationwide Class for their unjust enrichment.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the other members of the Classes alleged herein, respectfully request that the Court enter judgment in her favor and against Defendants as follows:

A. For an order certifying the Classes under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as the representative for the Classes and Plaintiff's attorneys as Class Counsel;

B. For an order declaring the Defendants' conduct violates the causes of action referenced herein;

C. For an order finding in favor of Plaintiff and the Classes on all counts asserted herein;

D. For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

E. For prejudgment interest on all amounts awarded;

F. For an order of restitution and all other forms of equitable monetary relief;

G. For injunctive relief as pleaded or as the Court may deem proper; and

H. For an order awarding Plaintiff and the Classes their reasonable attorneys' fees and expenses and costs of suit.

## JURY TRIAL DEMANDED

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all claims in this Complaint and of any and all issues in this action so triable as of right.

Dated: August 24, 2021                  Respectfully submitted,

*/s/ Tiffany M. Yiatras*
Tiffany M. Yiatras (58197MO)
**CONSUMER PROTECTION LEGAL, LLC**
308 Hutchinson Road
Ellisville, Missouri 63011-2029
Tel: 314-541-0317
Email: tiffany@consumerprotectionlegal.com

24

Jonathan M. Jagher*
D. Patrick Huyett*
**FREED KANNER LONDON & MILLEN LLC**
923 Fayette Street
Conshohocken, PA 19428
Phone: (610) 234-6486
jjagher@fklmlaw.com
phuyett@fklmlaw.com

William E. Hoese*
Douglas A. Abrahams*
Craig W. Hillwig*
Aarthi Manohar*
**KOHN, SWIFT & GRAF, P.C.**
1600 Market Street, Suite 2500
Philadelphia, PA 19103
Phone: (215) 238-1700
whoese@kohnswift.com
dabrahams@kohnswift.com
chillwig@kohnswift.com
amanohar@kohnswift.com

Katrina Carroll*
**CARLSON LYNCH**
111 W. Washington Street
Suite 1240
Chicago, IL 60602
Telephone: (312) 750-1265
kcarroll@carlsonlynch.com

* to seek admission Pro Hac Vice

*Counsel for Plaintiff and the Classes*

25